UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
GREGORY JOHN FISCHER,

                    Plaintiff,

           -against-                        MEMORANDUM AND ORDER
                                            08-CV-3807(JS)(ARL)
ASHLEY ANNE CLARK,

                    Defendant.
----------------------------------X
APPEARANCES:
For Plaintiff:      Gregory John Fischer, Pro Se
                    P.O. Box 285
                    Calverton, NY 11933-0285

For Defendant:      Clark D. Stith, Esq.
                    505 Broadway
                    Rock Springs, WY 82901

SEYBERT, District Judge:

           Gregory John Fischer ("Plaintiff"), proceeding pro se,

commenced this action against Ashley Ann Clark ("Defendant" or

"Clark") on September 16, 2008.   Pending before the Court is

Defendant's motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) and Plaintiff's motion to disqualify Defendant's

counsel.   For the reasons stated below, Defendant's motion to

dismiss is GRANTED and Plaintiff's motion to disqualify is DENIED.

## BACKGROUND

           Clark Allen Fischer and Anna Lee Fischer are two minor

children born to Plaintiff and Defendant.   Plaintiff maintains that

Clark unilaterally removed the children from New York and

transported them to Wyoming.   According to Plaintiff, Clark has

since harbored the children in Wyoming and has prevented Plaintiff

from having contact with them.

The Complaint alleges that Clark is an unfit mother who has assaulted Plaintiff and the children in the past. Clark has also allegedly embezzled money from businesses partially owned by Plaintiff. According to Plaintiff, there is at least one action pending in a state court in Wyoming pertaining to custody of the children. Additionally, Plaintiff filed a petition in the Family Court for the State of New York, Suffolk County, seeking custody of the children.

Plaintiff's lengthy and rather unclear Complaint alleges that this Court has diversity jurisdiction as well as jurisdiction pursuant to a variety of federal statutes, including several federal criminal statutes. Plaintiff alleges causes of action for "parental kidnaping, custodial interference, and parental abduction," "wreckless [sic] endangerment of the children," misappropriation and embezzlement, "malicious prosecution and frivolous action," intentional infliction of emotional harm, and torture. In addition to money damages, Plaintiff seeks several other forms of relief, including a declaratory judgment from this Court declaring that the process which permitted Defendant to file an action in the state courts in Wyoming has encouraged forum shopping by Defendant and has encouraged Defendant's flight, and a declaratory judgment stating that the Wyoming courts lack jurisdiction and that any order filed in the Wyoming action is

unenforceable.

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In addition to considering Defendant's arguments in favor of dismissal, the Court will <u>sua</u> <u>sponte</u> consider whether it has jurisdiction in this matter.

DISCUSSION

I. <u>Standard of Review</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must put forth enough factual allegations to "raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, __ L. Ed. 2d. __ (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (internal citations and quotations omitted). "But where the well-pleaded facts do not permit the court to infer more than the

3

mere possibility of misconduct," a complaint fails to state a claim. Id. The plaintiff's factual allegations, in short, must show that the plaintiff's claim is "plausible," not merely "conceivable." Id. at 1951.

When considering a motion to dismiss, a court can first identify pleadings that are not entitled to the assumption of truth because they are mere conclusions unsupported by factual allegations. See Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). After locating the well-pleaded factual allegations, the court should assume their truthfulness and "then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

The Court recognizes that pro se plaintiffs are entitled to a more liberal pleading standard. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197; 167 L. Ed. 2d 1081 (2007) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 25 (1976)) (internal quotation marks omitted); Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). Nonetheless, pro se plaintiffs must still comport with the procedural and substantive rules of law. See Javino v. Town of Brookhaven, No. 06-CV-1245, 2008 WL 656672, at *3 (E.D.N.Y. Mar. 4, 2008).

II.  <u>Plaintiff's Claims</u>

    A.  <u>Domestic Relations Exception</u>

       At the outset, to the extent that Plaintiff seeks to bring a cause of action under the Parental Kidnaping Prevention Act ("PKPA"), the Court advises Plaintiff that there is no private right of action under this statute.  See <u>Thompson v. Thompson</u>, 484 U.S. 174, 187, 108 S. Ct. 513, 98 L. Ed. 2d 512 (1988) (finding no private right of action under the PKPA); <u>Vartabedian v. Dounias</u>, No. 06-CV-2029, 2006 U.S. Dist. LEXIS 94160, at *16 (E.D.N.Y. May 11, 2006) ("The PKPA simply requires states to enforce custody determinations of other states and does not create a private right of action.").

       The Court lacks jurisdiction to hear Plaintiff's first and second causes of action for "parental kidnaping, custodial interference, and parental abduction" and reckless endangerment of the children.  It is well settled that federal courts generally do not have jurisdiction over such matters based upon a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack."  <u>Thomas v. New York City</u>, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).  For more than one hundred years, federal courts have consistently refused to resolve domestic relations disputes.  <u>See</u> <u>In Re Burrus</u>, 136 U.S. 586, 594, 10 S. Ct. 850, 34

5

L. Ed. 500 (1890) (holding that domestic relations law belongs to the individual States). The Second Circuit has held that this exception "includes civil rights actions directed at challenging the results of domestic relations proceedings." <u>Mitchell-Angel v. Cronin</u>, No. 95-CV-7937, 1996 U.S. pp. LEXIS 4416, at *5 (2d Cir. March 8, 1996) (internal citation omitted). "[F]ederal courts have discretion to abstain from exercising jurisdiction over issues on the verge of being matrimonial in nature as long as full and fair adjudication is available in state courts." <u>Id.</u> (Internal quotations omitted).

Plaintiff submits court documents filed in Wyoming state courts as exhibits to his Complaint. Exhibit 2 is a "Petition to establish paternity, custody, and support" filed by Clark in a state court located in Sweetwater, Wyoming. This document clearly indicates that there is an action currently proceeding in a Wyoming state court to establish custody of the minor children. There are other documents attached to the Complaint filed by Plaintiff in the Family Court of the State of New York, County of Suffolk, which also establish that there is at least one ongoing action in the New York State courts related to custody matters. These documents strengthen the Court's finding that this case belongs in Family Court. Thus, the Court finds that the domestic relations exception applies to Plaintiff's case.

While the Court is sympathetic to Plaintiff's desire to

see his children, this Court lacks jurisdiction to hear child custody matters. If Plaintiff believes that Defendant is unfit to have custody of the children, Plaintiff may raise such arguments before the various state courts currently hearing the parties' custody dispute. A full and fair adjudication of Plaintiff's claims regarding Defendant's fitness as a parent and whether the children belong in New York or Wyoming is available to Plaintiff in state court. There is no basis for this Court to determine custody and/or visitation issues. Thus, the Court dismisses Plaintiff's first and second causes of action with prejudice.

      B.   <u>Malicious Prosecution</u>

Plaintiff brings a claim against Defendant for malicious prosecution and "frivolous action." Plaintiff's malicious prosecution claim is based on the civil action filed by Defendant in Wyoming.

"A cause of action for malicious prosecution in New York has four elements: (1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff." <u>O'Brien v. Alexander</u>, 101 F.3d 1479, 1484 (2d Cir. 1996) (citing <u>Broughton v. State of New York</u>, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310). Although generally premised on a criminal action, a cause of action for malicious prosecution "may be based upon a civil action

instituted against plaintiff provided there is a showing of some interference with plaintiff's person or property . . . by the use of such provisional remedies as arrest, attachment, replevin or injunction, . . . or other burden imposed on plaintiff beyond the ordinary burden of defending a law suit." Id. (Internal citations omitted). Plaintiff has not shown that Defendant initiated an action that ultimately terminated in Plaintiff's favor, nor has Plaintiff shown that any such action was filed with malice and without probable cause that it would succeed; finally, Plaintiff has not shown that any such action burdened Plaintiff beyond the normal burden of defending a lawsuit. Thus, Plaintiff has not pled a cause of action for malicious prosecution.

Given Plaintiff's pro se status, and the requirement that the Court afford Plaintiff's Complaint leniency, the Court will consider whether Plaintiff intended to plead a cause of action for abuse of process. The elements of an abuse of process claim under New York law are: (1) regularly issued civil or criminal process, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective. Curiano v. Suozzi, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468 (1984). The Court has reviewed Plaintiff's Complaint and the exhibits attached thereto, and finds that Plaintiff has failed to state a cause of action for abuse of process. Even after drawing all inferences in favor of Plaintiff, it is clear that

Defendant filed an action to determine custody of the children. There is absolutely no indication that Defendant's filing was an abuse of process. The Court does not believe that amendment would result in any cognizable claim, thus the Court dismisses Plaintiff's fourth cause of action with prejudice.

## III. <u>Torture</u>

Plaintiff maintains that Defendant's "abuse" of Petitioner constitutes a violation of 18 U.S.C. § 2340. However, Congress has clearly stated that a party may not commence a civil action based upon this statute. The statute states, "Nothing in this chapter [18 USCS §§ 2340 <u>et</u> <u>seq.</u>] shall be construed as . . . creating any substantive or procedural right enforceable by law by any party in any civil proceeding." 18 U.S.C. § 2340B. Thus, it is abundantly clear that the Court must dismiss Plaintiff's sixth cause of action with prejudice.

## IV. <u>Embezzlement and Misappropriation</u>

Plaintiff maintains that Defendant embezzled and misappropriated money from a business owned in part by Plaintiff. It is unclear what statute or provision Plaintiff invokes. "To the extent he seeks to prosecute defendant[] for the crime of embezzlement, it is beyond his authority as a private citizen." <u>Amadasu v. Ngati</u>, No. 05-CV-2585, 2006 U.S. Dist. LEXIS 19654, at *35 (E.D.N.Y. Mar. 27, 2006) (citing <u>Leeke v. Timmerman</u>, 454 U.S. 83, 102 S. Ct. 69, 70 L. Ed. 2d 65 (1981)). To the extent that

9

Plaintiff intended to bring a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), such an "embezzlement claim is also without merit because embezzlement is a predicate act under RICO only where it involves the embezzlement from labor union, welfare, or pension funds." <u>Toms v. Pizzo</u>, No. 98-CV-7579, 1999 U.S. App. LEXIS 1403, at *4 (2d Cir. Feb. 2, 1999).

The Court finds that Plaintiff has also failed to state a cause of action for misappropriation. In the State of New York, "corporate fiduciaries and employees cannot, without consent, divert and exploit for their own benefit any opportunity that should be deemed an asset of the corporation." <u>Berman v. Sugo LLC</u>, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008) (quoting <u>Alexander & Alexander of N.Y. v. Fritzen</u>, 147 A.D.2d 241, 246, 542 N.Y.S.2d 530 (N.Y. App. Div. 1989)). Plaintiff has not alleged any facts indicating whether Defendant has a fiduciary relationship with Plaintiff, nor has Plaintiff even alleged what the corporation is, or when and what benefits Defendant allegedly misappropriated. Even affording the Complaint extreme leniency, Plaintiff has not alleged sufficient facts to apprise Defendant of his misappropriation claim.

Additionally, to the extent that Plaintiff brings his action as a "shareholder" and complains of alleged harms to the corporation, such claims belong to the corporation and not to

Plaintiff. New York courts hold that a shareholder has no individual cause of action for a wrong against a corporation. See Abrams v. Donati, 489 N.E.2d 751, 752, 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 783 (1985) ("[A]llegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually."); Henneberry v. Sumitomo Corp. of Am., No. 04-CV-2128, 2007 U.S. Dist. LEXIS 50633, at *81-83 (S.D.N.Y. July 12, 2007) (holding that suit was derivative in nature where plaintiff failed to provide "any factual allegations that show any duty specifically owed to [plaintiff] that [was] separate and outside of a duty [the corporation] may have owed all of the shareholders.") The reasoning does not change where a corporation is closely held because "[e]ven where the corporation is closely held, and the defendants might share in the award, the claims belong to the corporation, and damages are awarded to the corporation rather than directly to the derivative plaintiff." Wolf v. Rand, 258 A.D.2d 401, 403 (1st Dept. 1999).

Plaintiff claims that Defendant filed false reports on behalf of the corporation, redirected monies intended for the business to her own personal account, and has failed to pay taxes, presumably on behalf of the corporation. Such wrongs describe harms to the corporation, and thus should be brought on behalf of

11

the corporation and not Plaintiff. And, as stated by Defendant, the corporation must be named in the action.

Although there are exceptions to this general rule, <u>see e.g.</u>, <u>Fisher v. Big Squeeze (NY), Inc.</u>, 349 F. Supp. 2d 483, 487 (E.D.N.Y. 2004), it is unclear whether any exception applies in this case; Defendant only briefly mentions the derivative nature of Plaintiff's claims in her motion to dismiss, and Plaintiff fails to respond whatsoever to this issue. Frankly, it is entirely unclear what Plaintiff's claims are with respect to the corporation. Thus, the Court dismisses Plaintiff's third cause of action.

However, given Plaintiff's <u>pro</u> <u>se</u> status, the Court will permit Plaintiff to file an Amended Complaint complying with Federal Rule of Civil Procedure 8 that clearly sets forth what his claims are with respect to the alleged corporation. Plaintiff must indicate what the corporation is, as well as what harms he alleges Defendant committed against the corporation. If Plaintiff believes that Defendant breached a fiduciary duty to him, such must be pled in his Complaint.

IV. <u>Intentional Infliction of Emotional Harm</u>

New York law requires a party claiming intentional infliction of emotional distress to show four elements: (1) extreme and outrageous "conduct that goes beyond all possible bounds of decency;" (2) intention or knowledge that defendant's conduct would cause emotional distress; (3) severe emotional distress; and (4) a

causal link between the defendant's conduct and plaintiff's distress. Gay v. Carlson, 60 F.3d 83, 89 (2d Cir. 1995) (internal citations and quotation marks omitted). To satisfy the standard, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Murphy v. American Home Products Corp., 58 N.Y.2d 293, 303, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983). Courts have typically focused on the outrageousness element because it is most susceptible to determination as a matter of law and serves to filter out trivial complaints. See Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 586 N.Y.S.2d 350 (1993); see also Stuto v. Fleishman, 164 F.3d 820 (2d Cir. 1999) ("Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance.").

Traditionally, New York courts have been very strict in applying these elements, Gay, 60 F.3d at 89, and set a high threshold for conduct that is "extreme and outrageous" enough to satisfy the cause of action. Smalls v. Allstate Insurance Co., 396 F. Supp. 2d 364, 375 (S.D.N.Y. 2005). Accordingly, "[i]t is not enough that a defendant's intent was tortious, or even criminal, that its conduct was aimed at inflicting emotional distress or that such conduct was characterized by malice" when doing the act

13

complained of.  Hagie v. General Motors Corp., No. 98-CV-0634E(H),
1999 WL 222607, at *2 (W.D.N.Y. Apr. 6, 1999).

　　　　Plaintiff points to several incidents as evidence of
Defendant's extreme and outrageous conduct.  Plaintiff alleges that
Defendant intentionally prevents Plaintiff from contacting their
children, Defendant allows the children to have contact with
Plaintiff's extended family, Defendant conceals co-owned property
from Defendant, and Defendant has allegedly assaulted the children
and Plaintiff.  The Court has reviewed Plaintiff's Complaint and
the exhibits attached thereto, and finds that Plaintiff has not
alleged a cause of action for intentional infliction of emotional
distress.  It appears to the Court that Plaintiff is in a custody
battle with Defendant.  While the issue of custody often involves
intense emotions, the Court finds that Defendant's conduct in this
case does not rise to the level of extreme and outrageous conduct
that would be regarded as intolerable in a civilized society.
However, given Plaintiff's pro se status, the Court will grant
Plaintiff one opportunity to amend his claim for intentional
infliction of emotional distress.

V.　　The Court Cannot void a State Court's Order

　　　　Amongst his requests for relief, Plaintiff asks that this
Court issue an Order holding that any order issued by the State
Court in Wyoming is void.  Plaintiff has not presented any basis
for this Court to do so.  To the extent that Plaintiff believes

14

that the Wyoming Courts lack jurisdiction over Plaintiff, that is an argument that Plaintiff should make before the respective state courts hearing the claims against Plaintiff in Wyoming.

Pursuant to what is commonly known as the Rooker-Feldman doctrine, federal district courts lack subject matter jurisdiction over suits that are, in substance, appeals from state-court judgments. Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-415, 44 S. Ct. 149, 68 L. Ed. 2d 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). The Rooker-Feldman doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

There are four requirements for the application of the Rooker-Feldman doctrine: (1) the federal-court Plaintiff must have lost in state court; (2) the Plaintiff's injuries must be caused by the state court judgment; (3) the Plaintiff's claims must invite the district court to review and reject that state court judgment; and (4) the state-court judgment must have been rendered prior to the commencement of the district court proceedings. See Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

Federal suits that raise some independent claim that was

15

not the result of the state-court judgment "are outside <u>Rooker-</u>
<u>Feldman's</u> compass even if they involve the identical subject matter
and parties as previous state-court suits." <u>Hoblock</u>, 422 F.3d at
86. However, a Plaintiff cannot avoid the application of <u>Rooker-</u>
<u>Feldman</u> simply by presenting in federal court a legal theory not
raised in state court. <u>See</u> <u>id</u>. Rather, district courts lack
subject matter jurisdiction of federal constitutional claims that
are "inextricably intertwined" with a challenged state-court
judgment, even if such claims were not raised in the state court.
<u>Id.</u> (citing <u>Feldman</u>, 460 U.S. at 483-484 n. 16). In other words,
district courts lack jurisdiction "over challenges to state court
decisions arising out of judicial proceedings, 'even if those
challenges allege that the state court's action was
unconstitutional.'" <u>Walker v. Feller</u>, No. CV-05-2689, 2005 WL
1971862, at * 4 (E.D.N.Y. Aug. 16, 2005)(quoting <u>Feldman</u>, 460 U.S.
at 486).

Here, Plaintiff's request that this Court void any order
issued by the Wyoming State Courts is essentially a challenge to a
state court decision. This Court does not sit as an appellate
court to the state courts of Wyoming, and cannot invalidate an
order issued by that Court, regardless of whether Plaintiff
believes that the state courts in Wyoming lack jurisdiction over
him.

VI.  <u>Motion to Disqualify Counsel</u>

Plaintiff moves to disqualify Defendant's counsel, Clark D. Stith ("Stith), on the grounds that Stith: (1) may have to serve as a witness, (2) Stith may be a possible defendant in this action, (3) Stith has a conflict of interest, and (4) Stith is a "possible Attorney to a Preferred/Joined Defendant."  The Court finds that none of Plaintiff's grounds for disqualification are meritorious.

A.  <u>Lawyer as a Witness</u>

Rule 5-102 (c) of the New York Code of Professional Responsibility prohibits an attorney from acting as counsel on a case in which he may have to serve as a witness.  Rule 5-102(c) states,

> "A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client . . . . .

The rule provides for certain exceptions under which a lawyer may act as an advocate and also testify, which include situations where the "testimony will relate solely to an uncontested issue" and where "disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as a counsel in the particular case."  Rule 5-102(c) of the New York Code of Professional Responsibility.

Here, Plaintiff has not shown that Stith would be a witness in this matter. Plaintiff's motion in support of disqualification states that Stith is a witness in a property case in Wyoming. However, Plaintiff has not explained the correlation between the property dispute in Wyoming and this case, and has not explained why Stith would be a witness in this case.

B. <u>Conflict of Interest and Improper Successive Representation</u>

Plaintiff alleges that Stith has a conflict of interest in this case because Stith attempted to buy property from Plaintiff. Although unclear, it appears that Plaintiff also confided in Stith, believing that the conversations were protected by an attorney-client privilege. These arguments are almost identical to arguments Plaintiff made for Mr. Stith's disqualification in another action, <u>Fischer v. Talco Trucking</u>, No. 07-CV-4564.

"Unless there is a risk of taint to a court proceeding, courts are quite hesitant to disqualify an attorney from representing his client in litigation." <u>Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC</u>, 542 F. Supp. 2d 296, 306 (S.D.N.Y. 2008). "Courts are reluctant to grant such motions because they are often tactically motivated, cause undue delay, add expense, and have 'an immediate adverse effect on the client by separating him from counsel of his choice . . . .'" <u>Drag Racing Technologies, Inc. as D.R.T., Inc. v. Universal City Studios, Inc.</u>, 2003 WL

1948798, at * 2 (S.D.N.Y. 2003) (quoting Board of Education v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)). However, "[w]here an actual or severe conflict is so strong that 'no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation,' the court is obligated to disqualify the attorney." United States v. Schlesinger, 335 F. Supp. 2d 379, 382 (E.D.N.Y. 2004) (quoting United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994)).

"[W]ith rare exceptions[,] disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, . . . or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, . . . thus giving his present client an unfair advantage." Board of Education v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979) (internal citations and quotations omitted).

The Second Circuit has guided that in cases involving successive representation, an attorney may be disqualified if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

> (3) the attorney whose disqualification is
> sought had access to, or was likely to have
> had access to, relevant privileged information
> in the course of his prior representation of
> the client.

Hempstead Video, 409 F.3d at 133 (citing Evans v. Artek Sys. Corp.,
715 F.2d 788, 791 (2d Cir. 1983)).

Here, Plaintiff has not provided the Court with any grounds for disqualifying Mr. Stith. The business relation between Plaintiff and Fischer ended in about October of 2007, and it appears that the parties ceased negotiations at that time.

Additionally, Plaintiff has not presented the Court with an issue of improper successive representation. Although there is no "single, well-defined test for determining whether an attorney client relationship exists," most courts have held that "an attorney-client relationship exists if the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." Fierro v. Gallucci, No. 06-CV-5189, 2007 U.S. Dist. LEXIS 89296, 18-17 (E.D.N.Y. Dec. 4, 2007). The Court has reviewed the record and has not found any evidence that Stith represented Plaintiff at any time. To the extent that Plaintiff confided in Stith believing that Stith was his counsel, there is no indication that the subject matter of such confidences had anything to do with the present litigation. Thus, the Court DENIES Plaintiff's motion to disqualify Defendant's counsel.

<u>CONCLUSION</u>

Plaintiff is no stranger to this Court, and has had his claims dismissed on at least one prior occasion for lack of jurisdiction. <u>See</u> <u>Fischer v. Suffolk County Board of Elections, et al.</u>, No. 08-CV-4171 (JS)(ARL). It is clear to the Court that Plaintiff believes that he and his children have been wronged. However, the federal courts are not a forum for Plaintiff to air every wrong or grievance he feels he has encountered. Rather, the Court may only hear those claims that the Court has jurisdiction over. The Court advises Plaintiff that its doors remain open to litigate legitimate claims, but once again, the Court cannot hear the majority of the claims Plaintiff brings in this action.

However, given Plaintiff's <u>pro se</u> status, the Court will allow Plaintiff one opportunity to file an Amended Complaint. The Amended Complaint may not allege any cause of action dismissed with prejudice in this action; thus the Amended Complaint may clarify what Plaintiff's claims are in his current third cause of action and may re-plead Plaintiff's claim for intentional infliction of emotional distress. Plaintiff's Amended Complaint must be filed by October 23, 2009.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     September  24 , 2009
           Central Islip, New York

21